UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EARL SELLIE,

Plaintiff,

v.

THE BOEING COMPANY, a Delaware corporation.

Defendant.

CASE NO. C04-2247RSM

ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Earl Sellie brings this action for age discrimination in employment pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW 49.60.010 *et seq.*, contending that he was unlawfully terminated because of his age. The matter is now before the Court for consideration of defendant's motion for summary judgment. Oral argument was heard on January 6, 2006, and the parties' memoranda, exhibits, and arguments have been fully considered. For the reasons set forth below, defendant's motion shall be granted.

FACTUAL BACKGROUND

Mr. Sellie, who was born in 1946, worked for the Boeing Company ("Boeing") from 1972 until June of 2003, at which time he was 57 years old. For the first 27 years of his employment, Mr. Sellie worked in finances, in asset management, and project management. In 1999, Mr. Sellie became a Computer Process Specialist ("CPS") and his work group was changed due to a reorganization. He

supported a group led by Macy Moring, but he reported to Todd Keller along with nine other Computer Process Specialists. He had little actual contact with Todd Keller. In 2002, plaintiff began reporting directly to Macy Moring, for whom he performed administrative tasks. Boeing describes this last job as "below his skill set."

After September 11, 2001, Boeing experienced a significant downturn in business, and laid off many employees—eventually over 47,000 people. Plaintiff survived the first round of lay-offs, in 2002, but not the second, and he was laid off on June 30, 2003. The employees to be laid off each time were determined through "retention ratings" assigned to each employee through an assessment process. These assessment processes were conducted in October 2001 and October 2002. Plaintiff was given a "C" rating (the lowest) in 2001, but was not laid off. In 2002, he was initially given a "B" rating by his own manager Macy Moring, but this was changed to a "C" rating at the next level, when ratings for CPS employees from other groups were merged. Although it was a "high" C rating, plaintiff was laid off the following June.

The complaint alleges that plaintiff's 2001 "C" retention rating was assigned to him by manager Todd Keller because of his age. Boeing, in addition to denying that this rating was based on plaintiff's age, argues that the 2001 "C" rating is not actionable because plaintiff was not laid off as a result—thus, there were no adverse consequences. Plaintiff contends, however, that the 2001 rating segued into a "C" rating in the 2002 evaluation round, which did lead to his layoff. Plaintiff also asserts that Boeing did not follow its own policies in assigning the retention ratings, and that Boeing has destroyed the Employee Assessment Worksheets generated during the assessment process, such that he is entitled to an adverse inference as to the content of these documents. The factual basis for these allegations, and Boeing's response, will be developed more fully below.

LEGAL ANALYSIS

Under both the ADEA and the WLAD, courts follow the traditional burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Coleman v. Quaker Oats Co.*, 232 F. 3d 1271, 1281 (9th Cir. 2000); *Domingo v. BECU,* 98 P. 3d 1222, 1225 (2004). In responding to a motion for summary judgment, the plaintiff may produce direct or circumstantial evidence demonstrating

that a discriminatory motive more likely than not motivated the defendant's decision to terminate him, or alternatively may establish a prima facie case under the framework set out in *McDonnell Douglas Corp. Dominguez-Curry v. Nevada Transportation Department*, 424 F. 3d 1027, 1037 (9th Cir. 2005). Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin v. Hunt Wesson, Inc.,* 150 F. 3d 1217, 1220 (9th Cir. 1998). In the absence of direct evidence (the usual case), discriminatory animus is presumed if the plaintiff can demonstrate that (1) he was within the protected age group (over age 40); (2) he was doing satisfactory work; (3) he was discharged; and, for a "reduction in force" ("RIF") case such as this, (4) the discharge occurred "under circumstances giving rise to an inference of age discrimination." *Nesbit v. Pepsico, Inc.,* 994 F. 2d 703, 704-5 (9th Cir. 1993) (per curium); *Hunt*, 150 F. 3d at 1220. Such inference might arise if plaintiff can show that younger workers were more favorably treated during the RIF. If however, the plaintiff's position and duties were completely eliminated, no inference adverse to the employer can be drawn; in this case the plaintiff's case "crumbles." *Rose v. Wells Fargo & Co*., 902 F. 2d 1417, 1421 (9th Cir. 1990).

The degree of proof necessary to establish a prima facie case is minimal. *Wallis v. J.R. Simplot Co.*, 26 F. 3d 885, 888-889 (9th Cir. 1994); citing *Rose v. Wells Fargo & Co.*, 902 F. 2d at 1420. The mere existence of a prima facie case, however, does not preclude summary judgment. The prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. *Dominguez-Curry*, 424 F. 3d at 1037, citing *Lyons v. England*, 307 F. 3d 1092, 1112 (9th Cir. 2002). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. *Id*. If the employer carries this burden, the presumption of unlawful discrimination "simply drops out of the picture." *Id.*, quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510-11 (1993). The employee must then produce sufficient evidence to raise a genuine issue of material fact as to whether the employer's proffered explanation is merely a pretext for discrimination. *Id.*, citing *Coleman v. Quaker Oats Co.*, 232 F. 3d at 1282.

A plaintiff may prove pretext by direct or circumstantial evidence. *Villiarimo v. Aloha Island Air, Inc.*, 281 F. 3d 1054, 1062 (9th Cir. 2002). Reliance on circumstantial evidence to show pretext requires

a plaintiff to "put forward specific and substantial evidence challenging the credibility of the employer's motive." *Vasquez v. County of Los Angeles*, 349 F. 3d 634, 642 (9th Cir. 2003). Such evidence would show that "the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Dominguez-Curry*, 424 F. 3d at 1037, citing *Godwin*, 150 F. 3d at 1220-22. Direct evidence, on the other hand, creates a triable issue of fact as to a defendant's motive "even if the evidence is not substantial." *Dominguez-Curry*, 424 F. 3d at 1038, quoting *Godwin*, 150 F. 3d at 1221. "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.*, quoting *Coghlan v. American Seafoods Co.*, 413 F. 3d 1090, 1095 (9th Cir. 2005). Ultimately, it is the plaintiff's burden to "produce some evidence suggesting that [the defendant's action] was due in part or whole to discriminatory intent." *Id.* at 1037, quoting *McGinest v. GTE Services Corp.*, 360 F. 3d 1103, 1123 (9th Cir. 2004).

In opposing summary judgment, plaintiff argued that "[r]ecent developments in federal law allows [sic] Plaintiff to choose between the *McDonnell Douglas* shifting burden model and the mixed motive model. . . . Although direct evidence exists in this case, direct evidence is not required to use the mixed motive model. These same recent developments mandate that the *McDonnell Douglas* shifting burden model be modified, when plaintiff selects to use it." Plaintiff's Response, p. 14-15. Plaintiff's argument appears to draw from the Supreme Court's decision in *Desert Palace v. Costa*, 539 U.S. 90 (2003), where the Court discussed the use of a "mixed motive" jury instruction in Title VII cases; the Court held that direct evidence of discrimination is not required in order to obtain such an instruction. *Id.* at 2155. *Desert Palace* involved application of an amendment to the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000e-2(m). Courts of our sister circuits have held that this section does not apply to suits brought under the ADEA. *See*, *E.E.O.C. v. Warfield-Rohr Casket Co., Inc.,* 364 F. 3d 160, 164 n.2 (4th Cir. 2004). Thus, "ADEA mixed-motive cases remain subject to the burden-shifting rules of *Price Waterhouse*." *Id.,* citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). As *Price Waterhouse* has, for Title VII cases, been superceded by 42 U.S.C. § 2000e-2(m), the Ninth Circuit has observed, "The resulting jurisprudence has been a quagmire that defies characterization, despite the valiant efforts of various courts and commentators." *Costa v. Desert Palace, Inc.*, 299 F. 3d at 851.

> In addition to the confusion over "direct evidence", there has been considerable misunderstanding regarding the relationship among the *McDonnell Douglas* burden-shifting analysis (sometimes referred to as "pretext" analysis), which primarily applies to summary judgment proceedings, and the terms single-motive and mixed-motive, which primarily refer to the theory or theories by which the defendant opposes the plaintiff's claim of discrimination. The short answer is that all of these concepts coexist without conflict.

*Id*. at 854.

Plaintiff did not pursue his "mixed motive" theory at oral argument, or argue further for a "modified" *McDonnell Douglas* test. As we are now at the summary judgment stage, the *McDonnell Douglas* burden-shifting framework, as articulated by the Ninth Circuit, shall be applied: if a prima facie case is established, once the employer articulates a legitimate nondiscriminatory reason for its action, the plaintiff must produce evidence to raise a genuine issue of material fact as to whether that proffered reason is merely a pretext for discrimination. *Dominguez-Curry*, 424 F. 3d at 1037. "The plaintiff may show pretext either (1) by showing that unlawful discrimination more likely motivated the employer, or (2) by showing that the employer's proffered explanation is unworthy of credence because it is inconsistent or otherwise not believable." *Id*. But first, plaintiff must establish a prima facie case.

I. The 2001 Rating.

Both the ADEA and WLAD prohibit age discrimination with respect to hiring and firing, as well as with respect to "terms, conditions, or privileges of employment." 29 U.S.C. § 623(a); RCW 49.60.180. It is defendant's contention that the claim regarding plaintiff's 2001 rating should be dismissed because no adverse action within the reach of the statutes resulted. Even a "mediocre" performance evaluation, if it does not give rise to any further employment action, does not violate Title VII (or the ADEA). *Lyons v. England*, 307 F. 3d 1092, 1117 (9th Cir. 2002); *citing Kortan v. California Youth Authority*, 217 F. 3d 1104, 1112-13 (9th Cir. 2000). It is undisputed that the 2001 rating did not result in plaintiff's layoff, demotion, or other adverse action. Further, defendant has provided undisputed evidence that the 2001 rating did not in any way influence the 2002 ratings—they were entirely separate processes.

Plaintiff has cited two cases in support of his argument that the 2001 rating did constitute an adverse action, but both cases are inapposite. In *E.E.O.C. v. Hacienda Hotel*, 881 F. 2d 1504 (9th Cir.

1989), the Equal Employment Opportunity Commission brought suit on behalf of hotel maids who had been terminated on account of pregnancy. The hotel, with what the appeals court described as a "cavalier attitude", asserted there was "no harm, no foul" because the employees were rehired following pregnancy with no loss of seniority or other benefits. *Id.* at 1511. The Ninth Circuit Court of Appeals ruled that the termination constituted actionable discrimination even if none of the employees suffered a tangible loss. *Id.* Because this case involved a termination, not a simple evaluation, the reasoning is entirely inapplicable to plaintiff's situation. Similarly, in *Hashimoto v. Dalton*, 118 F. 3d 671 (9th Cir. 1997), the Ninth Circuit rejected a "no harm, no foul" argument with respect to a negative job reference. However, this case is distinguishable because the adverse job reference was motivated by retaliatory animus: it was the retaliatory aspect of the reference that was found actionable, irrespective of the absence of harm. *Id.* at 676. No such retaliatory motive has been alleged here.

Accordingly, the Court finds that the 2001 rating was not an adverse action actionable under either the ADEA of the WLAD. Thus, plaintiff's alleged direct evidence in the form of a stray comment by Human Resources Representative Thomas Moore in relation to plaintiff's appeal of the 2001 "C" rating is irrelevant to plaintiff's age discrimination claim.[1]

II. <u>The 2002 Rating and Subsequent Termination</u>.

Regarding the 2002 retention rating and subsequent termination, defendant contends that plaintiff cannot make even a prima facie case of age discrimination. Although plaintiff is indisputably a member of a protected class, doing a satisfactory job, and was terminated, defendant argues that he cannot meet the fourth requirement, in a RIF case, of showing that his termination occurred "under circumstances giving rise to an inference of discrimination." *Nesbitt v. Pepsico, Inc.*, 994 F. 2d 703. Plaintiff, however, contends that the following facts lead to an inference of age discrimination: (1) his retention rating was originally a "B", but was lowered to "C" at a "merge" meeting which his manager Macy Moring (who wanted him rated "B") was unable to attend; (2) he was highly rated within the "C" retention category,

---

[1]Plaintiff alleges that Mr. Moore stated, in explaining the denial of plaintiff's appeal, that "Boeing is looking to younger workers to take them into the future." By sworn declaration, Mr. Moore flatly denies that he ever made this statement. For the purposes of the summary judgment motion, however, defendant has not put this statement in dispute, and the Court's analysis accepts plaintiff's allegation.

but was terminated instead of lower-rated employees who were younger; and (3) after receiving his termination notice, he applied for other jobs for which he was qualified, but younger employees were hired instead. Plaintiff also contends that he is entitled to the benefit of an inference in his favor based on the destruction of documents: he argues that defendant has failed to produce certain requested "Employee Assessment Worksheets" from the 2001 and 2002 retention evaluations. He asserts that this "inference of spoilation" is sufficient to allow him to survive summary judgment, citing *Akiona v. U.S.*, 938 F. 2d 158, 161 (9th Cir. 1991).

In response to this "spoilation" argument, Boeing asserts that it simply answered, in response to a request for production, that the documents could not be located. Defendant argues that these worksheets are not material because they were used by individual managers in their own assessments, not at the actual "merge" meeting where plaintiff's rating was down-graded from B to C. Defendant also asserts that an adverse inference for "spoilation" is only appropriate when the documents were destroyed after a party was on notice that they would be needed for litigation. As plaintiff has not demonstrated that Boeing should have anticipated that these worksheets would be needed for litigation, or destroyed them in response thereto, the Court declines to apply any adverse inference for defendant's failure to produce these worksheets. *Id.*; *see also Byrnie v. Town of Cromwell, Board of Education*, 243 F. 3d 93, 107 (2d Cir. 2001).

As to plaintiff's comparison with younger "C" rated employees who were not laid off, Boeing points out that the others were not within his group and thus not a valid comparison. According to Boeing, plaintiff's argument presumes an "enterprise-wide" lay-off process, while in fact it was group-specific. According to Boeing, plaintiff's group of Computing Process Specialists comprised eight people, of which two received "C" ratings. The other "C", who was apparently not laid off, was only a year younger than plaintiff. The two who were rated "A" within the group were 51 and 59, so no inference of age discrimination can arise from the rating process or from the subsequent layoff decisions.

As to the technical writing position for which plaintiff applied when he learned of his impending layoff, defendant has convincingly argued that he was simply not qualified to be a technical writer because he had no relevant experience in that area. Plaintiff has not presented any evidence to refute this.

Therefore, no inference of discrimination arises from defendant's failure to hire plaintiff for the technical writing position.

Plaintiff's remaining argument for discrimination arises from the change in his 2002 retention rating from a "B" assigned him by Macy Moring, to a "C" at the "merge" meeting. At oral argument, defendant explained that at each level of the retention rating exercise, the goal of the managers was to maintain a 40-30-30 ratio for the "A", "B", and "C" ratings, respectively. Plaintiff was given a "B" rating by his manager within his small group. However, at the next level, his rating was "merged" with 131 other Computer Process Specialists from throughout the entire Boeing organization. At that merge meeting, plaintiff's job duties were compared to other CPS employees. Those duties, as described by plaintiff, were viewed as primarily administrative or secretarial, and less important than the tasks performed by other CPS employees. To meet the goal of 30 per cent "C" ratings, plaintiff's rating was lowered from "B" to "C" on the basis of his lower priority duties.

In a RIF case, replacement by a younger employee is not part of the prima facie case.

> Rather, plaintiff is required to show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination. In a reduction-in-force case, no adverse inference can be drawn from an employee's discharge if [his] position and duties are completely eliminated. A plaintiff's case "crumbles" unless [he] can demonstrate a continuing need for the same services and skills.

*Villodas v. Healthsound Corporation*, 338 F. Supp. 2d 1096, 1102 (D.Ariz. 2004); citing *Rose v. Wells Fargo & Co.*, 902 F. 2d 1417, 1421 (9th Cir. 1990) (internal citations omitted). Here, plaintiff's position was eliminated, and some of his job duties were distributed among three existing employees, aged 46, 52, and 53. Other duties were simply eliminated. Moring Deposition, pp. 118-119. Although this is not a situation where plaintiff's case simply "crumbles", no inference of discrimination arises from this re-distribution of plaintiff's duties. Therefore, he must provide some other evidence to create the inference and make his prima facie case. As to the actual termination, he has failed to do so.

Summary judgment is proper only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c).

The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S. H. Kress & Co*., 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id*. at 324. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is not the court's function at the summary judgment stage to determine credibility or to decide the truth of the matter. *Id*. Rather, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

Plaintiff has failed to make a prima facie case of age discrimination in this RIF case, in that he has failed to point to evidence that his discharge occurred "under circumstances giving rise to an inference of age discrimination." *Nesbit v. Pepsico, Inc.,* 994 F. 2d at 704-5; *Hunt*, 150 F. 3d at 1220. Accordingly, defendant's motion for summary judgment is GRANTED, and this action is DISMISSED.

Dated this 17th day of January, 2006.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE